# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAN C. REED, *individually, and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> BENJAMIN MOORE & CO., <br><br> Defendant. | Case No.  1:25-cv-00214-SAB <br><br> ORDER OF REASSIGNMENT OF THIS MATTER TO A DISTRICT JUDGE <br><br> FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION TO REMAND <br><br> (ECF No. 12) <br><br> **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Before the Court is Plaintiff Ian C. Reed's motion to remand this matter back to California Superior Court, Fresno County.  A hearing was held in this matter on April 23, 2025.  (ECF No. 27.)  Enzo Nabiev, Esq., appeared on behalf of Plaintiff.  Andrew Mailhot, Esq., appeared on behalf of Defendant.  Based on the papers, the record, and the arguments presented at the hearing, the Court will, for the following reasons, recommend granting Plaintiff's motion to remand.

Following amendment of the Local Rules effective March 1, 2022, a certain percentage of civil cases shall be directly assigned to a Magistrate Judge only, with consent or declination of consent forms due within 90 days from the date of filing of the action.  L.R. App. A(m)(1).  This action has been directly assigned to a Magistrate Judge only.  Not all parties have appeared or filed consent or declination of consent forms in this action.  Pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 302(c)(7), and Local Rule Appendix A, subsection (m), the Court shall direct the Clerk of the Court to randomly assign a District Judge to this action and the Court shall issue

1    findings and recommendations as to the pending motion to remand.

2                                                    **I.**

3                                          **BACKGROUND**

4           This is a putative class action for alleged violations of the California Labor Code.  (ECF

5    No. 1.)  Essentially, Plaintiff alleges that Defendant violated the Labor Code in multiple ways

6    through its employment of Plaintiff and other employees similarly situated.  (ECF No. 1, pp. 15-

7    22.)  On December 4, 2024, Plaintiff filed a complaint in Fresno County Superior Court, bringing

8    eight causes of action including: 1) failure to pay minimum wages for all hours worked, Cal.

9    Labor Code § 1194; 2) failure to pay overtime wages, Cal. Labor Code §§ 510, 1194, 1198; 3)

10   failure to provide meal breaks, Cal. Labor Code §§ 226.7, 512; 4) failure to authorize and permit

11   rest periods, Cal. Labor Code §§ 226.7, 512; 5) failure to indemnify necessary business expenses,

12   Cal. Labor Code § 2802; 6) failure to pay wages of discharged employees – waiting time

13   penalties, Cal. Labor Code §§ 201, 202, 203; 7) failure to provide and maintain accurate and

14   compliant wage records, Cal. Labor Code § 226(a); and 8) violation of Cal. Bus. & Prof. Code §§

15   17200 et seq.  Where appropriate, Plaintiff prays for an order certifying a class, declaratory relief,

16   injunctive relief, restitution, damages, pre-judgment interest, liquidated damages, statutory

17   damages, and attorney's fees.  (Id. at pp. 36-39.)

18          On February 18, 2025, Defendant removed this action to this Court.  (ECF No. 1.)  On

19   March 20, 2025, Plaintiff moved for remand, and the motion has been fully briefed.  (ECF Nos.

20   12, 13, 15.)  The Court held a hearing on April 23, 2025, and heard argument from the parties.

21   (ECF No. 16.)

22                                                   **II.**

23                                    **LEGAL STANDARDS**

24          A defendant may remove a matter to federal court if the district court would have original

25   jurisdiction—*i.e.*, federal question jurisdiction, diversity jurisdiction, or jurisdiction pursuant to

26   the Class Action Fairness Act of 2005.[1]  28 U.S.C. § 1441(a); 28 U.S.C. § 1453; Caterpillar, Inc.

27   _____

28   [1] Defendant expressly removes on only a theory of diversity jurisdiction and not pursuant to the Class Action
     Fairness Act.  (ECF No. 13, p. 8 n.1.)

                                                      2

1    v. Williams, 482 U.S. 386, 392 (1987).  As relevant here, federal district courts have original

2    jurisdiction over state law civil actions where no plaintiff is a citizen of the same state as any

3    defendant and the amount in controversy exceeds $75,000 exclusive of costs and interest.  28

4    U.S.C. § 1332(a)(1).

5        That said, "'[i]t is to be presumed that a cause lies outside [the] limited jurisdiction [of the

6    federal courts] and the burden of establishing the contrary rests upon the party asserting

7    jurisdiction.'"  Hunter v. Philip Morris, USA, 582 F.3d 1039, 1042 (9th Cir. 2009), quoting

8    Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 684 (9th Cir.2006) (alterations in original).

9    The "'strong presumption against removal jurisdiction means that the defendant always has the

10   burden of establishing that removal is proper,' and that the court resolves all ambiguity in favor of

11   remand to state court."  Id., quoting Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir.1992) (per

12   curiam) (internal quotation marks omitted).  Should a party wish to challenge jurisdiction

13   following removal, a motion to remand is the proper procedure to challenge a removal based on

14   lack of jurisdiction.  28 U.S.C. § 1447(c).

**III.**

**DISCUSSION**

17       Plaintiff argues that Defendant has not demonstrated that removal was proper for two

18   reasons.  First, Plaintiff argues that Defendant has not satisfied that the amount in controversy in

19   this matter is in excess of $75,000, inclusive of attorney's fees.  (ECF No. 12, pp. 4-14.)  Second,

20   Plaintiff argues that Defendant's removal was not timely.  (Id. at pp. 14-15.)  Defendant opposes,

21   arguing that it has demonstrated that the amount in controversy is well beyond $75,000 and that

22   Plaintiff's argument regarding timeliness is nothing but a red herring.  (ECF No. 13, pp. 6-16.)

23   While the Court agrees with Defendant that removal was timely, the Court agrees with Plaintiff

24   that this matter should be remanded.

**A.    Timeliness of Removal**

26       The Court begins with Plaintiff's final argument regarding timeliness because it is

27   jurisdictional.  28 U.S.C. § 1446.  As relevant here, the removal statute provides that where a

28   case's subject-matter jurisdiction would be based on diversity of citizenship, a defendant has 30

1    days to remove to federal court from the service of a "pleading, motion, order, or other paper

2    from which it may first be ascertained that the case is one which is or has become removal." Id.

3    at § 1446(b)(3). In this matter, Defendant believed that the case was removable from the initial

4    complaint, which the parties do not dispute was served on Defendant on January 17, 2025. (ECF

5    No. 13-1, Declaration of Andrew J. Mailhot ("Mailhot Decl."), ¶ 3; ECF No. 12, p. 21.) That

6    means that the deadline to remove was on Sunday, February 16, 2025. (ECF No. 13-1, Mailhot

7    Decl., ¶ 3.) Under the Federal Rules of Civil Procedure, if a responsive date "is a Saturday,

8    Sunday, or legal holiday, the period continues to run until the end of the next day that is not a

9    Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C). The next day was February 17,

10   2025, which was George Washington's Birthday—a federal court holiday. (ECF No. 13-1,

11   Mailhot Decl., ¶ 4); see 5 U.S.C. 6103(a). Thus, the deadline for Defendant to remove this action

12   was February 18, 2025, "the next day that [was] not a Saturday, Sunday, or legal holiday." Fed.

13   R. Civ. P. 6(a)(1)(C). Defendant removed this action on February 18, 2025. (ECF No. 1.)

14        Therefore, Plaintiff's argument regarding timeliness is patently without merit, which

15   Plaintiff conceded at the hearing.

16        **B.    Amount in Controversy**

17        Plaintiff argues that Defendant has failed to support its assumed violation rates for

18   Plaintiff's first four causes of action. (ECF No. 12, pp 12-16.) Regarding the sixth and seventh

19   causes of action, Plaintiff argues that Defendant calculation is based on speculation without any

20   evidence to support its maximum calculation. (Id. at pp. 16-19.) Plaintiff then attacks

21   Defendant's attorney's fees calculation. (Id. at pp. 19-20.) In response, Defendant goes over all

22   its calculations for every claim (ECF No. 13, pp. 6-13.) Defendant then addresses Plaintiff's

23   attorney's fees argument. (Id. at pp. 13-16.) The Court takes each claim as identified by

24   Defendant in turn.

25        To establish diversity jurisdiction, the amount in controversy must "exceed[ ] the sum or

26   value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The amount in

27   controversy is "simply an estimate of the total amount in dispute," and may include compensatory

28   damages, punitive damages, and attorneys' fees when authorized by statute. Lewis v. Verizon

1  Commc'ns, Inc., 627 F.3d 395, 400 (9th Cir. 2010); see also Gonzales v. CarMax Auto

2  Superstores, LLC, 840 F.3d 644, 648-49 (9th Cir. 2016).    Importantly, "the amount in

3  controversy reflects the maximum recovery the plaintiff could reasonably recover."    Arias v.

4  Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019).

5  In determining the amount in controversy in a removed action, district courts "consider

6  whether it is 'facially apparent' from the complaint that the jurisdictional amount is in

7  controversy."    Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997).

8  When it is not facially apparent from the plaintiff's state court complaint that more than $75,000

9  is in controversy, "the removing defendant bears the burden of establishing, by a preponderance

10  of the evidence, that the amount in controversy exceeds [the jurisdictional amount].    Under this

11  burden, the defendant must provide evidence establishing that it is 'more likely than not' that the

12  amount in controversy exceeds that amount."    Sanchez v. Monumental Life Ins. Co., 102 F.3d

13  398, 404 (9th Cir. 1996).    However, this "burden is not daunting, as courts recognize that under

14  this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's

15  claims for damages."    Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1204-05 (E.D.

16  Cal. 2008) (citation and quotations omitted).

17  In making this showing, a removing defendant "must be able to rely 'on a chain of

18  reasoning that includes assumptions . . . .'"    Jauregui v. Roadrunner Transp. Servs., Inc., 28 F.4th

19  989, 993 (9th Cir. 2022), quoting LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1201 (9th Cir.

20  2015).    These assumptions must reflect more than "mere speculation and conjecture" and require

21  "some reasonable ground underlying them."    Ibarra v. Manheim Investments, Inc., 775 F.3d

22  1193, 1197, 1199 (9th Cir. 2015).    Assumptions may be reasonable if they are "founded on the

23  allegations of the complaint."    Arias, 936 F.3d at 925.    And these assumptions "need not be

24  proven."    Id. at 927.    Parties may also submit evidence outside the complaint, including affidavits,

25  declarations, or other summary-judgment type evidence relevant to the amount-in-controversy.

26  Ibarra, 775 F.3d at 1197.

27  Here, the parties do not dispute the diversity of the parties or that the maximum amount at

28  stake in this action is not readily ascertainable from the face of Plaintiff's complaint.    Defendant

5

1   therefore bears the burden of establishing by a preponderance of the evidence that the amount in

2   controversy exceeds $75,000.

3           **1.      Summary of Defendant's Evidence**

4           Accompanying its notice of removal, Defendant included, for judicial notice, a declaration

5   from attorney Kane Moon (who presently represents Plaintiff), in a wage and hour case removed

6   from California Superior Court, Los Angeles County, to the Central District of California.  (ECF

7   No. 3.); see Rodas v. Flying Food Group LLC, 2:19-cv-00436-AB-GJS, ECF No. 1-2, Complaint,

8   (C.D. Cal. Jan. 18, 2019).   In Moon's April 25, 2024 declaration, which was submitted as

9   evidence in support of a motion for attorney's fees, Moon described that he is a founding partner

10  of the law firm Moon Law Group, PC (the same law firm that represents Plaintiff).  Id. at ECF

11  No. 67-4, Declaration of Kane Moon ("Moon Decl."), ¶¶ 2-3 (C.D. Cal. Apr. 29, 2024).  Moon

12  described his education and qualifications and stated that his "billing rate is $750.00 per hour,

13  which is my usual hourly rate in wage and hour litigations."  Id. at ¶ 4.  Moon then listed previous

14  class actions that resulted in settlements with final approval, including a case where Moon's

15  previous $650.00 hourly rate was approved.  Id. at ¶ 6.  Moon then went on to describe the

16  education and qualification of attorney Allen Victor Feghali, who is a partner at Moon Law

17  Group, PC (who also presently represents Plaintiff).  Id. at ¶ 7.  Moon stated that "Feghali's

18  hourly billing rate is $675.00."  Id. at ¶ 9.  Moon then described previous cases Feghali was

19  assigned to and specifically what Feghali accomplished, including specifically wage and hour

20  cases.  Id. at ¶¶ 9-10.[2]

21  _____

22  [2] The parties dispute whether and to what extent the Court may take judicial notice of the Moon declaration filed in
    Rodas.  A court may take judicial notice of a fact not subject to reasonable dispute, either because the fact is
23  generally known within the territorial jurisdiction of the trial court or because the fact is capable of accurate and
    ready determination from sources whose accuracy cannot reasonably be questioned.  F.R.E. 201(b).  Courts may also
24  take judicial notice of undisputed matters of public record.  See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th
    Cir. 2001).  Plaintiff does not dispute that the Rodas declaration is a public record but argues that the Court cannot
25  utilize the billing rates contained therein because that would be taking notice of the truth of the matter asserted
    therein, which is not appropriate.  (ECF No. 12-3.)  Defendant clarifies that it seeks to take notice of these
26  publicly filed documents only for the fact that they were filed and that Plaintiff made those statements at that time.
    (ECF No. 13-3.)  While potentially unnecessary on a motion to remand, see Ibarra, 775 F.3d at 1197, the Court will
27  take judicial notice of the Moon declaration.  However, the Court declines to take judicial notice of a document
    entitled "Maximizing Mobile Value: To BYOD or not to BOYD?"  This document is not capable of accurate and
28  ready determination from sources whose accuracy cannot reasonably be questioned.  Moreover, it appears to be
    wholly irrelevant to the issue of remand.

Attached to its opposition, Defendant has included declarations from Terry Pallozzi Andrew J. Mailhot. Terry Pallozzi is the senior human resources manager for Defendant and is based in Montvale, New Jersey. (ECF No. 13-2, Declaration of Terry Pallozzi ("Pallozzi Decl."), ¶ 1.) In connection with this litigation, Pallozzi reviewed the personnel, payroll, and human resource related records pertaining to Plaintiff, including Plaintiff's wage statements from December 5, 2020, to July 30, 2024. (Id. at ¶ 2.) Based on this review, Pallozzi noted that Plaintiff employed by Defendant from approximately July 30, 2018, to July 30, 2024. (Id. at ¶ 3); (see ECF No. 12-1, Declaration of Ian Reed ("Reed Decl."), ¶ 2.) Plaintiff was a full-time, hourly employee who was compensated at $39.09 per hour. (Id.); (but see ECF No. 12-1, Reed Decl., ¶ 3.)

From December 5, 2020, through December 31, 2020, Plaintiff worked and was compensated for approximately 120.25 hours. (Id. at ¶ 4.) Because there are 17 workdays in this time period, Pallozzi calculated that if Plaintiff worked every available workday during this period, Plaintiff's shift length, on average, would have been 7.07 hours per shift. (Id.)

In 2021, Plaintiff worked and was compensated for 2,212.76 hours. (Id. at ¶ 5.) These hours in 2021 did not include any sick leave, vacation, or holiday hours Plaintiff might have taken or for which he received compensation. (Id.) Based on his knowledge of Plaintiff's work schedule, Pallozzi stated that there were 249 possible workdays for Plaintiff in 2021. (Id.) This means that if Plaintiff worked every possible workday in 2021, his shift length on average would be 8.87 hours per shift. (Id.)

In 2022, Plaintiff worked and was compensated for 1,975.78 hours. (Id. at ¶ 6.) These hours do not include sick leave, vacation, or holiday hours Plaintiff might have taken or for which he received compensation. (Id.) Based on his knowledge of Plaintiff's work schedule, Pallozzi stated that there were 251 possible workdays for Plaintiff in 2022. (Id.) However, in 2022, Plaintiff received 45.81 hours of personal holiday pay, meaning Plaintiff did not work approximately six days in 2022. (Id.) This means that there were approximately 245 possible workdays for Plaintiff in 2022, which if Plaintiff worked every day for 245 days, his shift length on average would be 8.06 hours. (Id.)

In 2023, Plaintiff worked and was compensated for 1,875.39 hours.  (Id. at ¶ 7.)  These hours do not include sick leave, vacation, or holiday hours Plaintiff might have taken or for which he received compensation.  (Id.)  Based on his knowledge of Plaintiff's work schedule, Pallozzi stated that there were 252 possible workdays for Plaintiff in 2023.  (Id.)  However, in 2023, Plaintiff received 150.81 hours of vacation and 43 hours of sick leave, amounting to approximately 24 days off.  (Id.)  This means that there were approximately 228 possible workdays for Plaintiff in 2023, which if Plaintiff worked every day for 228 days, his shift length on average would be 8.23 hours per shift.  (Id.)

In 2024, Plaintiff consistently worked at least 8-hour shifts five days per week, until he took parental leave on April 4, 2024.  (Id. at ¶ 8); (see ECF No. 12-1, Reed Decl., ¶ 4.)  On July 1, 2024, Plaintiff returned to work with at least 8-hour shifts, five days per week, until the end of his employment on July 30, 2024.  (Id.)

In total, from December 5, 2020, through July 30, 2024, Plaintiff worked approximately 872 shifts, each with a minimum of eight hours for each shift.  (Id. at ¶ 9.)  During that same time period, Plaintiff worked for 90 pay periods.  (Id. at ¶ 10.)

Defendant also has included the declaration of Andrew J. Mailhot, who is an attorney and of counsel to the law firm Jackson Lewis P.C., which represents Defendant in this matter.  (ECF No. 13-1, Mailhot Decl., ¶ 1.)  As relevant here, Mailhot stated that Defendant reasonably believes that that a full day deposition of Plaintiff is warranted.  (Id. at ¶ 9.)[3]

### 2.    Wage and Hour Claims

#### a.    Meal Period Claim

In the complaint, Plaintiffs alleges that Defendant "maintained a policy and practice of not paying Plaintiff . . . for hours worked . . . ."  (ECF No. 1, p. 61, ¶ 16.)  Plaintiff then alleges that he "[was] often interrupted during meal breaks without compensation."  Id.  Defendant argues that district courts have found that "a reasonable interpretation of 'pattern and practice' points to a [violation] rate somewhere between 20% and 100%."  (ECF No. 13, p. 8), quoting Cartwright v.

---

[3] Plaintiff has included a declaration from Matthew Dial, an attorney of record representing Plaintiff.  (ECF No. 12-2, Declaration of Matthew Dial, ¶ 1.)  Dial provides the procedural background to the preceding state-court litigation before Defendant removed the action.  (See id. at ¶¶ 2-7.)

Envoy Air, Inc., No. 2:21-cv-05049-RGK (PDx), 2021 WL 4100287, at *3 (C.D. Cal. Sept. 9, 2021); see also Avila v. Rue21, Inc., 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020) ("District courts have found . . . that violation rates of 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation."). Defendant also asserts that some district courts have found a 50% violation rate to be a reasonable assumption where the allegations in a complaint include the term "policy and practice" was used in combination with the qualifier "sometimes." Oda v. Gucci America, Inc., Nos. 2:14-cv-7468-SVW (JPRx), 2:14-cv-07469-SVW (JPRx), 2015 WL 93335 (C.D. Cal. Jan. 7, 2015); see also Bryant v. NCR Corp., 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (using 60% violation rate for the meal period claim); Alvarez v. Office Depot, Inc., No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (using 60% violation rate).

Defendant then relies on the Pallozzi declaration for the proposition that Plaintiff worked approximately 872 shifts between December 5, 2020, through July 30, 2024, meaning that there were also approximately 872 meal period violations. (ECF No. 13, p. 9.) Because on average Plaintiff's shifts were over 8 hours, Plaintiff was entitled for at least one 30-minute meal period. (Id.) (citing ECF No. 13-2, Pallozzi Decl., ¶¶ 2-10.) Utilizing a 50% violation rate, Defendant proffers that Plaintiff could potentially recover $17,043.24 for his meal period claims with a $39.09 per hour hourly.

Plaintiff responds by arguing that Defendant's proposed 50% violation rate is speculative and going so far as to suggest that, based on allegations in the complaint, "this Court cannot determine whether any average number of missed meal . . . per week is a reasonable assumption." (ECF No. 15, p. 9.) Plaintiff then relies on Barrett v. Armadillo Holdings, LLC, where a district court recognized that regarding meal break claims, "courts in the Ninth Circuit have frequently held a violation rate between 20% and 60% to be reasonable" where there are allegations of a "pattern and practice." No. 1:22-cv-00882-DJC-DB, 2024 WL 1133419, at *5 (E.D. Cal. Mar. 15, 2024). The Barrett court then observed that the plaintiff's allegations occasionally included "limiting language"—specifically that "the meal and rest break violations [were] only '[f]rom-time-to time.'" Id. The court weighed that this limiting language and found that it did not

1    undermine that there was a pattern and practice, but the court noted that courts in this District

2    "have found a violation rate of no more than 20%, or once per week, is appropriate where there

3    are both pattern and practice allegations and this type of limiting language." Id., citing Cabrera v.

4    South Valley Almond Co., LLC, No. 1:21-cv-00748-AWI-JLT, 2021 WL 5937585, at *8 (E.D.

5    Cal. Dec. 16, 2021) ("[A]ssumptions of one hour of unpaid overtime per week and one hour of

6    unpaid minimum wages per week are consistent with allegations that violations occurred 'at

7    times' and 'on occasion,' particularly [when a] Complaint alleges that the Labor Code violations

8    at issue [ ] are due to 'policies and/or practices' on the part of [d]efendants."); Ramirez v.

9    Cornerstone Bldg. Brands, No. 2:21-cv-01017-MCE-JDP, 2022 WL 1556664, at *1 (E.D. Cal.

10   May 17, 2022) (20% violation rate was reasonable where complaint contained allegations of

11   violations occurring "often" or "from time to time" as well as violations resulting from

12   "company-wide policies and procedures"); Nunes v. Home Depot U.S.A., Inc., No. 2:19-cv-

13   01207-JAM-DB, 2019 WL 4316903, at *2 (E.D. Cal. Sept. 12, 2019) (applying 20% violation

14   rate where there were allegations of a uniform policy and practice, and allegations that the

15   violations occurred from time to time); Serrieh v. Jill Acquisition LLC, No. 2:23-cv-00292-DAD-

16   AC, 2023 WL 8796717, at *3 (E.D. Cal. Dec. 20, 2023) (24% violation rate reasonable based on

17   similar allegations).

18         Thus, the Court is required to make a decision between the two lines of caselaw on

19   whether to utilize a 20% violation rate or a 50% violation rate. The Court reiterates that it is

20   Defendant's burden to provide evidence that would preponderate to the Court utilizing a 50%

21   violation rate. Essentially, Defendant has provided the allegations in the complaint and caselaw.

22   Plaintiff has countered with his own caselaw that demonstrates that a 20% violation rate is

23   appropriate based on the allegations in the complaint here. Because Defendant has not provided

24   any other evidence in support of its 50% violation rate, the Court finds that the 20% violation rate

25   is appropriate under the circumstances.

26         In addition, Plaintiff has provided the Court with a declaration, in his motion, wherein he

27   states that in 2020, his hourly rate was $35.00 per hour. (ECF No. 12-1 ¶ 3.) Thereafter, "[m]y

28   hourly rate was increased by $1 per year until my departure, when my hourly rate was

1    approximately $39 per hour." (Id.)  In its opposition, Defendant has not provided the Court with

2    calculations of Plaintiff's salaries over the years, instead opting to use the presumably ending

3    hourly rate of $39.09.  While Plaintiff has provided estimates of his yearly hourly rate, the Court

4    is unable to determine when Plaintiff received raises within the years or how many shifts would

5    be at what salary rate.  Defendant has not offered an alternative, and therefore, the Court will

6    conservatively use the lowest pay rate of $35.00 per hour, the most reasonable assumption under

7    the circumstances.

8        Accordingly, the Court calculates that 872 potential meal break violations multiplied by

9    $35.00 per hour equals $30,520.00.  The Court then utilizes a 20% violation rate to reach a total

10   of **$6,104.00** as the potential liability for Plaintiff's meal break claims.

11                    **b.  Rest Period Claim**

12       The parties essentially make the same arguments as to Plaintiff's rest period claims.  (ECF

13   No. 13, pp. 9-10; ECF No. 15, pp. 8-10.)  The Court relies on its analysis under meal break claims

14   to reach a total of **$6,104.00** as the potential liability for Plaintiff's rest period claims.

15                    **c.  Overtime Claim**

16       In the complaint, Plaintiff alleges that "Defendant[] maintained a policy and practice of

17   not paying Plaintiff . . . for all hours worked, including all overtime wages."  (ECF No. 1, p. 18, ¶

18   15.)  Defendant cites that Plaintiff has also alleged that Defendant (1) "regularly" used a system

19   that rounded time; (2) required Plaintiff to wait in line to clock into work and when returning

20   from meal breaks—without quantifying consistency; (3) required Plaintiff to work after clocking

21   out; (4) "sometimes" required Plaintiff to work the weekends; and (5) "sometimes" required

22   Plaintiff to attend work for 2-hours without pay.  (Id.)  The Court notes that under Plaintiff's

23   overtime cause of action in the complaint, Plaintiff alleges that "Plaintiff . . . worked more than

24   eight hours in a workday," and "Defendant failed to pay Plaintiff . . . overtime compensation for

25   the hours [he has] worked in excess of the maximum hours permissible by law."  (Id. at p. 28, ¶¶

26   43-44.)

27       Defendant argues that Plaintiff worked on average and at a minimum of at least 8 hours

28   per shift.  (ECF No. 13, p. 10.)  Defendant then assumes that Plaintiff was eligible to receive

overtime for all 872 shifts that he worked. "As such, a violation rate of 1 hour per every 5 shifts would be reasonable." (Id.)

Plaintiff responds that notwithstanding Pallozzi's declaration, there is no evidence to demonstrate that Defendant's calculation of one hour every five shifts is based on any reasonable assumption. Plaintiff begins by noting that Pallozzi's first calculation for 2020 was that Plaintiff worked significantly less than 8 hours per shift—7.07 hours per shift. (ECF No. 13-2, Pallozzi Decl., ¶ 4.) Plaintiff then points out an inconsistency between the hours Pallozzi stated Plaintiff worked in 2021, first stating that Plaintiff worked 2,212.76 hours and then in the next sentence stated that it was 2,149.33 hours. (Id. at ¶ 5.) Plaintiff notes that Pallozzi used the higher number in his calculation. (Id.)

Plaintiff also argues that failure to pay overtime wages is for overtime that he accrued and for which he was not compensated. (ECF No. 15, p. 5.) For example, Plaintiff asserts that even using Pallozzi's estimate of 8.06 hours per shift in 2022, this would mean that Plaintiff would be due overtime compensation of roughly two hours every month. (Id.) Plaintiff then notes that Pallozzi's 2023 estimate is 8.23 hours per shift, and for 2024, Pallozzi stated only that Plaintiff worked at least 8-hour shifts. With these inconsistencies, Plaintiff argues that it is not a reasonable assumption that Plaintiff accrued one hour of overtime for every five shifts.

Regarding how Defendant reached its damages estimate of $10,225.94 for this claim, Defendant did not explain its logic to the Court. It appears that Defendant took an average of all of Plaintiff's hours worked over the years and divided that by all potential shifts Plaintiff worked. Defendant then presumably used the one in five shifts to extrapolate that of the 872 possible shifts Plaintiff worked, Plaintiff would be owed overtime for 174.4 hours. Defendant then multiplied $39.09 by time-and-a-half to get the hourly for these overtime hours (which would be $58.635). (See ECF No. 1, p.7.) Thereafter, Defendant multiplied 174.4 by $58.635 to get the sum $10,225.94. None of these calculations were explained in the opposition, leaving the Court guessing at the logic (e.g., the Court is left to assume that time-and-a-half is the correct calculation for damages under this claim) and double-checking the math.

The Court agrees with Plaintiff that Pallozzi's declaration does not give a sufficient basis

1    for a reasonable assumption that Plaintiff was due overtime compensation of one hour every five

2    shifts.  While assumptions are permissible, they may not be "unreasonable."  Ibarra, 775 F.3d at

3    1197.  Thus, the Court agrees with Plaintiff that Defendant has not met its burden to provide the

4    Court with evidence that preponderates to the Court utilizing an hour of overtime for every five

5    shifts worked.  See Ibarra, 775 F.3d at 1197.  Defendant has not offered an alternative basis of

6    how to calculate damages for this claim, and there is not one readily apparent to the Court without

7    unreasonable assumptions.

8         Moreover, Defendant's sole case in support of its one hour for five shifts worked is

9    unpersuasive.   In Jackson v. Marten Transport, Ltd., Defendant cites to analysis in an unpaid

10   minimum wage claim where there were allegations of "at all times . . . Plaintiff engaged in

11   several nondriving tasks during shifts."  No. 5:24-cv-02368-AH-(DTBx), 2025 WL 342083, at *3

12   (C.D. Cal. Jan. 30, 2025).  Yet, the defendant in that case proposed a violation rate, for unpaid

13   minimum wage, of 15 minutes of off-the-clock time for each day.  Id. at *2.  Defendant has failed

14   to connect the dots between Jackson and this case or this claim.  Thus, Defendant's parenthetical

15   quotation that the court in Jackson stated—and meant—"[c]onsidering the complaint's broad

16   allegations . . . the Court finds Defendant's estimate [of one violation per week] was reasonable"

17   is without force.

18        Because the Defendant has failed to meet its burden, and the Court cannot decern a

19   reasonable way to calculate damages for this claim otherwise, the Court finds that Defendant has

20   demonstrated that the potential liability for this claim is **$0.00**.  See Jauregui v. Roadrunner

21   Transportation Services, Inc., 28 F.4th 989, 994 (9th Cir. 2022) ("[I]f a defendant provided no

22   evidence or clearly inadequate evidence supporting its valuation for a claim, then it might be

23   appropriate for a district court to assign that claim a $0 value.").

24              **d.  Regular Rate Claim**

25        Defendant raises in its opposition that Plaintiff is raising a regular rate claim.  (ECF No.

26   13, pp. 10-11.)  Defendant first observes that Plaintiff alleges that "throughout the statutory

27   period, Plaintiff . . . received nondiscretionary bonuses, shift differentials, and other renumeration

28   . . . [that] . . . Defendant failed to incorporate . . . [when] calculating the correct overtime rate of

1    pay, meal break premium rate of pay, and sick day rate of pay, leading to underpayment." (Id.,

2    quoting ECF No. 1, pp. 18-19, ¶ 15.) Defendant also points out that Plaintiff claimed that

3    Defendant "regularly" rounded Plaintiff's time. (Id.)

4        Defendant then makes the following argument in its opposition:

5            It is not disputed that Defendant paid certain bonus and shift
             differentials of the type that Plaintiff alleges were improperly
6            omitted from the calculation of his regular rate of pay. A review of
             Plaintiff's payroll records indicates that some form of additional
7            remuneration was made in each payroll period. Plaintiff worked 90
             pay periods between December 5, 2020, and July 30, 2024. It is
8            reasonable to assume, given the presence of shift differentials or
             bonuses in each pay period, that—should Plaintiff prevail on this
9            claim—his regular rate of pay would have been off by at least 5%,
             resulting in potential damages of **$2,045.19.**
10
     (ECF No. 13, pp. 10-11.)
11
12       Defendant has provided the Court with no evidence to support the assumption that "some

13   form of additional remuneration was made in each payroll period" or that "given the presence of

14   shift differentials or bonuses in each pay period, that . . . [Plaintiff's] regular rate of pay would

15   have been off by at least 5%." (Id.) The Court is left questioning what these shift differentials or

16   bonuses are or on what they would have been based. Furthermore, there is no evidence or

17   explanation or caselaw for how Plaintiff's regular rate of pay would have been off by 5%.

18   Without more, the Court is left to find that these figures are "mere speculation and conjecture,

19   with unreasonable assumptions." Ibarra, 775 F.3d at 1197.

20       Accordingly, the Court finds that Defendant has demonstrated potential liability for this

21   claim is **$0.00**. See Jauregui, 28 F.4th at 994.

22       **e. Minimum Wage Claim**

23       Defendant argues that for Plaintiff's minimum wage claim, Plaintiff has alleged that

24   "[t]hroughout the statutory period, Defendant failed to pay Plaintiff . . . for all hours worked

25   (including minimum wage)." (See ECF No. 1, pp. 26-27, ¶ 32.) Defendant argues for an

26   assumption of one hour of time for every week (or every five shifts) then multiplied by two for

27   statutorily imposed liquidated damages. (ECF No. 13, p. 11), citing Jauregui, 28 F.4th at 994.

28   Plaintiff responds that Defendant is attempting to double count minimum wage and off-the-clock

                                                    14

1  claims. (ECF No. 15, pp. 6-7.) Plaintiff then takes the tact that because the majority of Plaintiff's

2  shifts were in excess of eight hours, any time worked would be covered by Plaintiff's overtime

3  claim. (Id.) However, by Plaintiff's own terms, the minimum wage claim is for failure to pay

4  minimum wage for "all hours worked."

5  In order to get to its proposed sum, Defendant explains that it took the maximum shifts

6  Plaintiff could have worked each year and divided that by five to get the number of shifts to be

7  compensated at the rate of one hour. Defendant then multiplied each year by the minimum wage

8  in California (for employers with 26 or more employees). Defendant then doubled that to account

9  for liquidated damages.

10  Damages for 2020:    3.4(shifts)    x $13 (2020 min. wage)    =    $44.20

11  Damages for 2021:    50 (shifts)    x $14 (2021 min. wage)    =    $700

12  Damages for 2022:    49 (shifts)    x $15 (2022 min. wage)    =    $735

13  Damages for 2023:    50.4 (shifts) x $15.50 (2023 min. wage)    =    $781.20

14  Damages for 2024:    26.6 (shifts) x $16 (2024 min. wage)    =    $425.60

15  Total:  $2,686.00

16  Total with liquidated damages:  $5,372.00

17  (ECF No. 13, p. 11.) The Court finds Defendant's assumptions on this calculation to be

18  reasonable and supported by evidence. Plaintiff offers no other viable alternative to calculate

19  these damages nor has Plaintiff pointed to a complete lack of evidence or inadequate evidence for

20  this claim. Accordingly, the Court finds that Defendant has demonstrated that Plaintiff's potential

21  damages on this claim to be **$5,372.00**.

22  **f.  Off-Clock Claim**

23  For off-the-clock claims, Defendant argues the following:

24  Defendant's assumption that Plaintiff would work approximately 1
hour of off-the-clock time is supported by Plaintiff's own

25  allegations. Plaintiff specifically enumerates all the activities in
which he performed that were unpaid: (1) "regularly" using a

26  system that rounded time; (2) waiting in line to clock into work and
when returning from meal breaks—without quantifying

27  consistency; (3) working after clocking out; (4) "sometimes"
working the weekends (without specifying how long he would

28  work or at what frequency); and (5) attending work for 2-hours

15

before being told to clock-out without pay. These vague allegations alone substantiate a finding that Plaintiff worked, at minimum, for one hour per 5 shifts without receiving compensation. As such, Plaintiff would potentially recover **$6,817.30.**

(ECF No. 13, p. 12.) Defendant makes essentially the same argument in its notice of removal, except it offers a total of $5,640.00. (ECF No. 1, pp. 7-8.) Defendant provided no evidence, caselaw, or explanation as to the assumptions Defendant made and how it got to this figure. Plaintiff responds that Defendant's 'off-the-clock' claims are further not supported because it appears that Defendant may be counting this time twice. (ECF No. 15, pp. 6-7.) While assumptions based on Plaintiff's allegations are permitted, a defendant nonetheless needs to explain and support its assumptions.

The Court finds that Defendant has not provided evidence that preponderates to support its proffered sum. Moreover, it is not apparent to the Court how it could otherwise calculate this claim. Therefore, Defendant has demonstrated that the potential damages for this claim is **$0.00**. See Jauregui, 28 F.4th at 994.

### g. Derivative Claims

In the complaint, Plaintiff alleges that "[d]uring the relevant time period, Defendant[] failed, and continue[s] to fail to pay [Plaintiff], without abatement, all wages required to be paid by California Labor sections 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendant['s] employ." (ECF No. 1, p. 74, ¶ 64.) Further, the relevant law provides that "if an employer willfully fails to pay wages owed, in accordance with sections 201 and 202, then the wages of the employee shall continue as a penalty wage from the due date, and at the same rate until paid or until an action is commenced; but the wages shall not continue for more than thirty (30) days." (Id. at p. 74, ¶ 66.) Plaintiff also alleges that "Defendant[] fail[ed] to provide accurate itemized wage statements in accordance with California Labor Law § 226." (Id. at p. 78, ¶ 88.) Finally, Plaintiff alleges that "Defendant[ has] intentionally and willfully failed to provide employees with complete and accurate wage statements." (Id. at p. 75, ¶ 71.)

Defendant argues that because these allegations lack any limiting language, then it is

1    reasonable to assume that the potential damages would be for all thirty days.  (ECF No. 13, p. 12.)

2    This is so because Plaintiff's lawsuit was commenced more than 30 days following when the

3    alleged unpaid wages were due.  (Id.), citing Jauregui, 28 F.4th at 994.  Plaintiff responds by

4    insisting that other courts have found that the assumption of the full 30 days is not warranted.

5    (ECF No. 15, p. 8.)  The Court agrees with Defendant.

6         In Jauregui, the Ninth Circuit discussed this type of claim and explicitly noted that the

7    district court had erred by not affording a reasonable assumption of a 30-day violation based on

8    allegations in the complaint.  28 F.4th at 993-94.  While the defendant had not provided evidence

9    to demonstrate that the putative class plaintiffs all were entitled to 30-day penalty damages, the

10   complaint nonetheless provided a sufficient basis for such a reasonable assumption.  Id.

11        In opposition, Plaintiff cites to Dunn, where this Court found that the plaintiff's allegation

12   that the plaintiff "seeks penalties '. . . up to an amount equal to those [daily earnings] owed for 30

13   days of work'" did not support an assumption of 30 days.  2021 WL 5122057, at *17-*18.  The

14   Court finds Dunn to be distinguishable for two reasons.  First, in Dunn, the court focused on the

15   allegation that the plaintiff sought damages in an amount "up to" 30 days of work.  Meanwhile,

16   here, there are no qualifying allegations.  Second, Dunn was decided before Jauregui, where the

17   Ninth Circuit clarified that a 30-day violation rate can be a reasonable assumption based on the

18   allegations in the complaint.  28 F.4th at 993-94.  The Court finds that the unqualified allegations

19   in the complaint here support a reasonable assumption that damages for this claim would be for

20   30 days.  Additionally, the Court finds it appropriate for this claim to use Plaintiff's final hourly

21   rate of $39.00; Plaintiff does not dispute that his final hourly was at least $39.00.

22        The Court takes 30 days and multiplies it by eight hours for a total of 240 hours.  The

23   Court then multiplies 240 hours by $39.00 for a total sum of **$9,360.00.**

24        Similarly, Defendant argues that based on Plaintiff's allegations regarding itemized wage

25   statements, Plaintiff would be entitled to the statutory maximum of $4,000.00.  Plaintiff does not

26   dispute this point.  The Court agrees with Defendant and finds that it has demonstrated that

27   Plaintiff's damages for these statutory violations would be **$4,000.00.**

28   / / /

### 3.    Attorney's Fees

As with the amount in controversy, the Court agrees with the parties that Plaintiff's complaint does not provide for reference a specific quantity of attorney's hours that Plaintiff intends to expend.  The parties part ways regarding the number of hours Plaintiff's attorneys might expend, the hourly rate to apply, and whether attorney's fees should be considered as to Plaintiff or whether divided among the putative class.  The Court takes each in turn.

The Court begins with Defendant's proffer that Plaintiff would expend 81 hours in this wage and hour case.  Defendant has cited to the usual litany of litigation that occurs in any civil case, giving hour estimates.  (ECF No. 13, pp. 14-15.)  Defendant then cites to a case from California Superior Court, Sand Diego County, where the court was faced with a prevailing plaintiff who "[did] not include plaintiff's attorney's actual billing records."  Ruiz v. Nighttrain Enterprises, No. 37-2017-00006174-CU-OE-CTL, 2020 Cal. Super. LEXIS 46732, at *2 (Cal. Sup. Ct. Jan. 31, 2020).  The court noted that it was "a very simple wage & hour/employment case" Id.  The court then estimated that "100 hours [was] a reasonable number of hours for th[e] case." Id. at *3.  Accordingly, the Court finds that Defendant has demonstrated that its estimation of 81 hours is supported by reasonable assumptions and demonstrated by a preponderance of the evidence.  See Oth Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011).

Next, the Court observes that the parties have significantly sparred over the hourly rate to apply and what the Court may consider when deriving that amount.  Defendant is equivocal, vacillating between $500.00 per hour to $300.00 per hour as its proposed variable.  (ECF No. 13, pp. 14-15.)  Meanwhile, Plaintiff homes in on that even Defendant's $300.00 per hour figure would need to be supported by a reasonable assumption.  (ECF No. 15, p. 10.)

Defendant provides cases where courts in this Division of the Eastern District of California have found that a reasonable range of an attorney's hourly rate is between $250 and $400 per hour.  (ECF No. 13, p. 14), citing Flores v. FCA US LLC, No. 1:17-cv-0427-JLT, 2019 WL 6211367, at *12 (E.D. Cal. Nov. 21, 2019); Trujillo v. Singh, No. 1:16-cv-01640-LJO-EPG, 2017 WL 1831941, at *3 (E.D. Cal. May 8, 2017); Silvester v. Harris, No. 1:11-CV-2137-AWI-SAB, 2014 WL 7239371, at *4 (Dec. 17, 2014).  Accordingly, the Court finds that Defendant has

1  sufficiently demonstrated by a preponderance of evidence that an hourly rate of $300.00 is

2  appropriate.

3       However, the Court finds that Defendant's proposed attorney's fees rate of $500.00 per

4  hour to not be reasonable.  Defendant moved for judicial notice of the Moon declaration in <u>Rosas</u>,

5  but the Court notes that on a motion for remand it may consider summary-judgment type

6  evidence.  <u>Ibarra</u>, 775 F.3d at 1197.  It appears that Defendant is not asking that the Court take the

7  Moon declaration whole cloth, but rather, Defendant seemingly is relying upon the Moon

8  declaration to support its proposal of a $500.00 per hour rate.  In addition to this, Defendant

9  posits that the cases it cited for rates as high at $400.00 per hour were decided in 2019 and that by

10 2025, this rate would have increased to $500.00 per hour.  While reasonable assumptions are

11 permitted, the Court disagrees that merely because six years have elapsed from the last case

12 Defendant provided that a $100 per hour rate increase is a reasonable assumption.  That said, the

13 Court finds that this evidence, taken together, does support a reasonable assumption for a $400.00

14 per hour rate.

15      Finally, Plaintiff argues that Defendant has ignored that this is a putative class action with

16 claims that statutorily include attorney's fees for "an employee" or "any employee," which means

17 that any award of attorney's fees would need to be divided by the proposed class for purposes of

18 calculating the amount in controversy.  (ECF Nos. 12, 15.)  Defendant attempts to eschew this

19 argument by asserting that notwithstanding that this is a putative class action, Plaintiff's attorneys

20 would be working on this matter on Plaintiff's behalf.  (ECF No. 13, p. 14.)

21      While "where an underlying statute authorizes an award of attorneys' fees, . . . such fees

22 may be included in the amount in controversy," <u>Galt G/S v. JSS Scandinavia</u>, 142 F.3d 1150,

23 1156 (9th Cir.1998), Plaintiff has identified that in a putative class action, attorney's fees "cannot

24 be allocated solely to [named] plaintiffs for purposes of amount in controversy," unless the statute

25 in question authorizes an award of attorney's fees "solely to the named plaintiffs in a class

26 action."  <u>Gibson v. Chrysler Corp.</u>, 261 F.3d 927, 942 (9th Cir. 2001).  In <u>Gibson</u>, the Ninth

27 Circuit noted that a California statute which authorized an award of attorney's fees "to a

28 successful party" did not satisfy that condition, whereas a Louisiana statute, which awarded

attorney's fees to "the representative parties" in a class action, did satisfy that condition.  Id.

Soon thereafter, the Ninth Circuit discussed that "potential attorneys' fees [could not] be attributed solely to the named plaintiffs for purposes of amount in controversy," where the statute in question authorized an award of attorneys' fees "to a prevailing plaintiff."  Kanter v. Warner-Lambert Co., 265 F.3d 853, 858 (9th Cir. 2001).  In both Gibson and Kanter, the Ninth Circuit reasoned that, in a putative class action, attributing attorney's fees solely to a named plaintiff for purposes of amount in controversy would be improper, because the plaintiff would not ultimately be entitled to the entirety of that award upon a favorable disposition of the case.  Gibson, 261 F.3d at 942; Kanter, 265 F.3d at 858; see Rodriguez v. Goodrich Corp., No. 2:14-cv-01026-JAM-AC, 2014 WL 3842904, at * (E.D. Cal. Aug. 1, 2014).

Defendant has offered no rebuttal to this argument, in its brief or at the hearing, that either Gibson and Kanter do not apply or that the statutes in question are inapplicable to the Ninth Circuit's reasoning.  Moreover, Plaintiff highlights that at least one court has observed, "[u]nder Gibson and Kanter, the Court need not close its eyes to Plaintiff's ultimate class action aspirations: it would defy common sense to treat the matter as an individual action for purposes of removability, with the specter of a class action looming in the immediate future."  Rodriguez, 2014 WL 3842904, at *3.  The Court agrees with Plaintiff that any amount of attorney's fees in this case would need to be distributed pro rata among the class.  In the complaint, Plaintiff identifies that the class would encompass at least 100 individuals.  (ECF No. 1, p. 23, ¶ 26.) Thus, the Court will divide its attorney's fee award by 100 in order to ascertain Plaintiff's attorney's fees for purposes of the amount in controversy.

The Court begins by taking 81 hours and multiplying that by $400.00 per hour, which comes to the sum of $32,400.00.  Next, the Court divides $32,400.00 by 100 class members, which comes to the sum of $324.00.  Accordingly, the Court finds that Defendant has demonstrated by a preponderance of the evidence that the amount in controversy for attorney's fees is **$324.00**.

### 4.    Calculation of the Amount in Controversy

Based on the foregoing, the Court finds that Defendant has demonstrated the following

1    amount in controversy by a preponderance of the evidence.

| Claim | Amount |
|-------|--------|
| Meal Period Claim | $6104.00 |
| Rest Period Claim | $6104.00 |
| Overtime Claim | $0.00 |
| Regular Rate Claim | $0.00 |
| Minimum Wage Claim | $5,372.00 |
| Off-the Clock Claim | $0.00 |
| Derivative Claims | $13,360.00 |
| Attorney's Fees | $324.00 |
| **Total:** | **$31,264.00**[4] |

In light of the foregoing, the Court finds that Defendant has failed to satisfy the amount in controversy. Accordingly, Court will recommend that the assigned District Judge grant Plaintiff's motion for remand and remand this matter to California Superior Court, Fresno County.

**IV.**

**CONCLUSION AND ORDER**

IT IS HEREBY ORDERED that the request for judicial notice (ECF No. 3) is GRANTED IN PART and DENIED IN PART as discussed above. IT IS FURTHER ORDERED that the Clerk of the Court is DIRECTED to randomly assign this matter to a District Judge.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Plaintiff's motion to remand be GRANTED (ECF No. 12) and that this matter be remanded to California Superior Court, Fresno County.

These findings and recommendations are submitted to the district judge assigned to this

---

[4] In the alternative, the Court observes that had the Court utilized the non-pro rata sum of $32,400.00 for attorney's fees, the amount in controversy Defendant has demonstrated exists, by a preponderance of the evidence, would be $63,340.00—still below the $75,000.00 jurisdictional threshold.

action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014), citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **May 16, 2025**

STANLEY A. BOONE
United States Magistrate Judge