UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAN C. REED, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN MOORE & CO.,<br><br>Defendant. | No. 1:25-cv-00214-KES-SAB<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS AND GRANTING PLAINTIFF'S MOTION TO REMAND MATTER TO FRESNO COUNTY SUPERIOR COURT<br><br>Docs. 12, 20 |

In December 2024, plaintiff Ian C. Reed initiated this action by filing a complaint in Fresno County Superior Court. On February 18, 2025, defendant Benjamin Moore & Co. removed the action to this Court. Doc. 1. Pursuant to appendix A of the Court's local rules, upon filing, this matter was assigned to a magistrate judge only. *See* Local Rule App. A(m)(1). On March 20, 2025, plaintiff filed a motion to remand this action, which was fully briefed and heard before the assigned magistrate judge. Docs. 12, 13, 15, 16.

On May 16, 2025, the assigned magistrate judge issued findings and recommendations recommending that this matter be remanded to Fresno County Superior Court and ordered that the Clerk of Court assign a district judge to this action. Doc. 20. The findings and recommendations were served on the parties and included notice that any objections were required to be submitted in writing within fourteen days. *Id.* Neither party filed objections, and the time to do so has

1

1 | passed.

2 | In accordance with 28 U.S.C. § 636(b)(1), the Court has conducted a de novo review of this case. Having carefully reviewed the file, the Court agrees that this case should be remanded to state court as defendant has not met its burden to demonstrate that the amount in controversy exceeds $75,000.

The findings and recommendations correctly conclude that $13,360 is in controversy for plaintiff's derivative claims, given that plaintiff's allegations put at issue thirty-days-worth of waiting time penalties as well as the maximum penalty regarding alleged wage statement violations. *See* F&R 16–17. The findings and recommendations also correctly reason that attributing the total amount defendant calculated for attorneys' fees would be improper given that plaintiff brings his case as a putative class action and appropriately find the amount at issue for attorneys' fees. *Id.* at 20. The findings and recommendations further correctly "zeroed-out" the regular rate claim and off-the-clock claims, given that defendants' assertions were speculative, unsupported, and potentially duplicative, and that no better assumptions for calculating the amounts in controversy were identified. *Id.* at 13–16.

"The district court should weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). Yet "there is an important distinction between a court offering entirely new or different assumptions itself versus modifying one or more assumptions in the removing party's analysis." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022). It remains true that "[w]here a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden." *Id.* However, where "the reason a defendant's assumption is rejected is because a different, better assumption is identified," the court "should consider the claim under the better assumption—not just zero-out the claim." *Id.* This is in part because "the amount in controversy is supposed to be an estimate of the entire potential amount at stake in the litigation," which "demonstrates the unrealistic nature of assigning $0" to a plaintiff's claims. *Id.* at 994.

Regarding the minimum wage claim, defendant assumed plaintiff suffered one hour of unpaid wages for every five shifts plaintiff worked. Doc. 13 at 11. Defendant separated those violations into years and multiplied the number of assumed violations by California's minimum wage during that year to calculate the amount in controversy for this claim. *Id.* Finally, defendant multiplied the total by two to account for the liquidated damages that would be at issue, resulting in $5,372 at issue for this claim. *Id.* The findings and recommendations found that defendant's assumptions were reasonable and that defendant had met its burden in demonstrating that amount was in controversy. F&R 15.

The Court agrees that an assumed violation of one hour of unpaid work with an assumed violation rate of 20% of plaintiff's shifts is reasonable given the language of plaintiff's complaint—that is, that defendant had a "systematic, company-wide policy and practice" of failing to pay employees for all hours works and that certain of such violations occurred "regularly" or "sometimes." Doc. 1 at 58, 61. However, multiplying the number of assumed violations by the minimum wage is an unreasonable estimation of the amount at issue for this claim, given plaintiff's actual pay rate is before the Court. Plaintiff could recover pay for any unpaid work at his pay rate, not at the statutorily set minimum wage, and thus, using his actual pay rate is a better assumption of the actual amount in controversy for this claim. Thus, because the Court rejects defendant's assumption "because a different, better assumption is identified," the Court considers the claim under the better assumption. *See Jauregui*, 28 F.4th at 996. Multiplying by $35.00 instead of the minimum wage yields $6,279 in controversy for minimum wage violations, and doubling the amount to account for liquidated damages provides that $12,558 is in controversy for this claim total.[1]

For plaintiff's overtime claim, the magistrate judge found that assuming that plaintiff had suffered a one-hour overtime violation per every five shifts was not a reasonable assumption and

---

[1] Though plaintiff's hourly rate varied throughout his employment between $35.00 and $39.09 per hour, the magistrate judge found that $35.00 was the most reasonable assumption for purposes of calculating claims that occurred throughout plaintiff's employment. F&R 11. The Court agrees.

3

1  zeroed out the claim. F&R 13. However, defendant provided the declaration of the senior human
2  resources manager for defendant, Terry Pallozi, which indicated the approximate number of shifts
3  plaintiff worked and the average number of hours plaintiff worked worked per shift for each
4  relevant year: in 2020, plaintiff worked approximately 120.25 hours during a maximum of 17
5  shifts which averages to approximately 7.07 hours each shift; in 2021, plaintiff worked
6  approximately 2,149.33 hours during a maximum of 249 shifts which averages to approximately
7  8.63 hours each shift; in 2022, plaintiff worked approximately 1,975.78 hours during a maximum
8  of 245 shifts which averages to approximately 8.06 hours each shift; in 2023, plaintiff worked
9  approximately 1,875.39 hours during a maximum of 228 shifts which averages to approximately
10 8.23 hours each shift; and in 2024, plaintiff worked over eight hours per day, five days a week,
11 until April 4, 2024, and then from July 1, 2024 until July 30, 2024.[2] Doc. 13-2. Based on the
12 information defendant provided, and plaintiff's allegation that he would be entitled to overtime
13 pay for any hours worked in excess of 8 hours per shift, Doc. 1 at 70, it appears reasonable to
14 calculate the amount in controversy based on the hours plaintiff worked in excess of eight hours.
15     For 2020, plaintiff's average shift was less than eight hours, so there is no dollar amount
16 in controversy for allegedly owed overtime pay for that year.
17     In 2021, plaintiff worked 2149.33 hours over the course of a maximum of 249 shifts.
18 Working 8 hours per shift for 249 shifts would yield only 1992 hours. Thus, it appears plaintiff
19 worked *at least* 157.33 hours for which he was entitled to receive overtime pay.[3] Defendant
20 provides that these hours were logged on plaintiff's wage statements and time records, *see* Doc.
21 13-2, so for any such overtime hours for which plaintiff claims he is owed pay, plaintiff
22 presumably was paid his regular wage, but not the additional overtime compensation (that is, he

---

[2] There is a discrepancy in the Pallozzi declaration. It declares both that plaintiff worked 2,212.76 hours in 2021 and 2,149.33 hours. Doc. 13-2 at 2. The Court used the lower number to calculate 8.63 hours as plaintiff's average shift length for 2021. The Pallozzi declaration does not provide the total hours plaintiff worked in 2024. Doc. 13-2 at 3.

[3] This is a conservative estimate, and the true number may be larger. Two hundred forty-nine is the maximum number of shifts plaintiff could have worked. If, in reality, he worked fewer, then the number of hours he worked per shift was greater, and he would be entitled to more overtime hours.

4

1  was presumably paid time, but not time *and a half*).  Using plaintiff's pay rate as $35 per hour, he
2  would be entitled to $52.50 for an hour worked in overtime.  The difference between $52.50 and
3  $35 is $17.50.  Multiplying 157.33 hours by $17.50 yields $2,753.28.  However, it does not
4  appear reasonable, based on plaintiff's allegations that defendant had a "systematic, company-
5  wide policy and practice" of not paying all overtime wages, to assume that plaintiff was not paid
6  overtime wages for all 157.33 hours.  Doc. 1 at 58.  Rather, defendant offered a violation rate of
7  20%, Doc. 13 at 10, which is a reasonable assumption for an allegation of a "policy and practice."
8  *See* F&R 8–10 (collecting cases).  Twenty percent of $2,753.28 is $785.76.

9  Applying the same line of reasoning to 2022 and 2023 yields $55.23 and $179.87, at issue
10 for this claim, respectively.  Defendant did not provide sufficient information to calculate an
11 amount at issue for 2024, so the value assigned for that year is $0.

12 Total at issue then for the overtime claim is $1,020.86.

13 For plaintiff's meal period and rest break claims, defendant assumed a 50% violation rate.
14 Doc. 13 8–10.  The magistrate judge rejected the 50% assumption as unreasonable and instituted
15 an alternate assumption of 20%.  F&R 11.  The magistrate judge applied the same reasoning to
16 the rest break claim.  *Id.*

17 Though there are cases that find that the same language plaintiff alleges—that is, that
18 defendant had a "systematic, company-wide policy and practice" of failing to provide compliant
19 meal periods and rest breaks and that defendant "sometimes, but not always" or "often" violated
20 meal period and rest break requirements, Doc. 1 at 58, 62—supports an assumed 60% violation
21 rate, *see, e.g.*, *Powell v. USI Ins. Servs., LLC*, Case No. 2:23-cv-04129-ODW (BFMx) 2023 WL
22 6276578, at *4 (C.D. Cal. Sept. 25, 2023), more courts find an assumed 20% violation rate to be a
23 reasonable assumption when a "policy and practice" is alleged in conjunction with limiting
24 language, *see* F&R 8–10 (collecting cases).  Here, though "a removing defendant is not required
25 to go so far as to prove plaintiff's case for him by proving the actual rates of violation," *Feao v.*
26 *UFP Riverside, LLC*, No. CV173080PSGJPRX, 2017 WL 2836207, at *5 (C.D. Cal. June 29,
27 2017), defendant has provided no reason that calculating the violation rate at 60% would be more
28 reasonable.  Thus, the Court agrees with the conclusion of the findings and recommendations that

5

the amount in controversy for the rest period and meal period claims is $6,104.00 each.

In total, plaintiff's claims put at issue about **$39,471**, which is less than the jurisdictional minimum.

For these reasons, defendant has failed to meet its burden to show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.

Accordingly:

1. The findings and recommendations issued on May 16, 2025 (Doc. 20) are adopted;
2. Plaintiff's motion to remand (Doc. 12) is granted;
3. This action is remanded to Fresno County Superior Court for lack of subject matter jurisdiction;
4. The Clerk of Court shall mail a copy of this order to the clerk of the Fresno County Superior Court; and
5. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:   June 5, 2025

UNITED STATES DISTRICT JUDGE